## LONE STAR CANAL CO. v. CANNON.

(Court of Civil Appeals of Texas. Galveston. Dec. 7, 1911.)

1. RELEASE (§ 13*) — VALIDITY — WANT OF CONSIDERATION.

An irrigation canal company, sued for failure to furnish sufficient water for plaintiff's rice crop during a certain season, cannot rely upon a release of liability contained in a contract for service for the succeeding season, if there was no other consideration than the agreement for such subsequent service; the company being legally bound to furnish it.

[Ed. Note.—For other cases, see Release, Cent. Dig. §§ 21–27, 29; Dec. Dig. § 13.*]

2. WATERS AND WATER COURSES (§ 261*)— IRRIGATION—CONTRACTS TO SUPPLY WATER —BREACH—DAMAGES.

On suit for breach of defendant's contract to supply plaintiff, a tenant, with water for a rice crop, it was error to authorize recovery of a share of the additional amount of rice which would have been raised if the land had been properly irrigated, which would have gone to the landlord as rent; there being no privity of contract between the landlord and the company.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 261.*]

3. WATERS AND WATER COURSES (§ 261*)— IRRIGATION — CONTRACTS — WAIVER — EVIDENCE.

Under provision, in a contract to supply water for irrigation, that furnishing water without 10 days' written notice of demand therefor, as provided by the contract, should not be deemed a waiver of such requirement, in a suit by the consumer for breach of the contract, it was error to permit him to show that ordinarily written notice was not given.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 261.*]

Appeal from District Court, Chambers County; L. B. Hightower, Judge.

Action by J. I. Cannon against the Lone Star Canal Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Davis & Marshall and Terry, Cavin & Mills, for appellant. J. L. Manry, R. J. McMurrey, and Smith, Crawford & Sonfield, for appellee.

PLEASANTS, C. J. This suit was brought by the appellee against the appellant to recover damages alleged to have been caused by the failure of appellant to comply with its contract to furnish appellee a sufficient supply of water to properly irrigate a rice crop grown by him during the season of 1909 upon land contiguous to appellant's irrigating canal in Chambers county. Appellee alleged that by reason of appellant's failure to comply with its said contract the rice crop produced by him for the year 1909, upon the 340 acres of land which appellant had contracted to irrigate, was 5,297 sacks less than he would have produced had appellant furnished him a sufficient supply of water, and that the market value of said rice was $18,-737.20, which amount, less $3,707.44 due ap-

pellant as water rents, and $1,260 due it for seed furnished him, he claimed as damages for appellant's breach of its contract to furnish sufficient water for said crop. Appellant answered by general and special exceptions and general denial and by special plea, in which it averred that, if appellee had sustained any damage by reason of any failure on the part of appellant to comply with its said contract of 1909, he had, in a contract made and entered into with appellant in the year 1910, expressly released and discharged appellant from all liability for said damage. It further pleaded that if appellee had sustained any damage as alleged by him, it was because of the failure of appellant's water supply, which was due to causes over which appellant had no control, and that by the express terms of the contract upon which appellee sues appellant was not liable for damages so caused. By supplemental petition appellee alleged that the release pleaded by appellant was void for the reason that it is contained "in a contract between plaintiff and defendant for the supply of water for irrigation for the year 1910, and plaintiff alleges that the defendant is an irrigation corporation having the right of public domain and owing a duty to the public, including plaintiff, to furnish irrigation, and said clause is an unreasonable and illegal exaction and was one demanded by defendant before it would furnish irrigation to plaintiff, and plaintiff was compelled to sign said contract in order to get irrigation, and the same is therefore illegal and void and not binding upon the plaintiff and is wholly without consideration." Appellee also pleaded that the clause in the contract sued on which required him, whenever he wanted his crop watered, to give defendant 10 days' written notice, stating the number of acres to be watered and the time when the water should be placed on the crop, was waived by appellant. The trial in the court below with a jury resulted in a verdict and judgment in favor of plaintiff for the sum of $4,000.

The pertinent provisions of the contract for alleged breach of which plaintiff seeks to recover the damages claimed in this suit are as follows:

"State of Texas, Chambers County. This indenture, made this the 26th day of May, 1909, by and between the Lone Star Canal Company (a corporation chartered under the laws of the state of Texas), party of the first part, and J. I. Cannon, party of the second part, witnesseth: The said party of the first part hereby covenants and agrees to furnish a sufficient quantity of water, as hereinafter stipulated, which, together with the natural rainfall, shall be sufficient to properly irrigate the rice to be grown on the following described land during the season of 1909. Said land is situated in Chambers county, Texas, and is out of and a part of

Chas. Wilcox ⅓ league survey now owned by Dr. Hawthorne, and is thus described by metes and bounds: 'Being all the land planted in rice on the above-described tract of land during the year 1909 by party of second part.'

"Second. Said party of the first part agrees to furnish water for the proper irrigation of the rice crop after the rice is up and growing on the above-described land, from its canal or pumping plant, it being well understood and agreed between the parties hereto that said party of the first part is to use due diligence in furnishing water from its canal or pumping plant, which, together with the natural rainfall, will be sufficient to properly irrigate said land; but it is not to be held liable for any damages that may be caused by the failure to get sufficient supply of water from the river or bay, or fresh water, or failure or accident over which it has no control, and it is especially agreed that in case of accident to its machinery, injury to its canal, failure of its fresh water supply, or overflow sufficient to overflow the machinery of the said party of the first part, that the said party of the first part shall not be held responsible for any damage resulting from its failure to furnish water, but shall only be bound to use reasonable diligence to repair the machinery or canal with reasonable dispatch, or to clean, repair and put in operation its machinery as soon as the water shall have receded therefrom; and in case the natural rainfall shall be deemed sufficient by the manager of the party of the first part, and it shall not be necessary to furnish any water from the canal or pumping plant for the raising of said crop of rice, the said party of the second part is nevertheless to pay to the party of the first part its proportion of the rice crop for its water rent, as hereinafter provided, for the service of said company in being prepared and ready to furnish water in the event same is needed. * * *

"Sixth. When party of the second part shall want water he shall give ten days' notice in writing to the Lone Star Canal Company of Anahuac, Texas, and shall name and give as nearly as possible the number of acres to be irrigated.

"Seventh. The fact that the party of the first part does furnish water in whole or in part, to water any land, without written application, shall not be considered as a waiver of the conditions herein, nor any of them, and shall not make the party of the first part liable to furnish any more water to said land, or for damages in any amount whatsoever."

There is sufficient evidence to sustain the finding that plaintiff's rice crop was damaged in the amount found by the jury by reason of the failure of appellant to furnish sufficient water to properly irrigate same, and that such failure was not due to any cause beyond appellant's control and for which appellant could not, under the terms of said contract, be held responsible.

The contract entered into by appellant and appellee for the year 1910 contains similar provisions to those above quoted from the contract sued on, besides other provisions setting out the reciprocal undertakings of the parties in reference to the subject-matter of the contract. The seventeenth clause of said contract of 1910 is as follows: "In consideration of the premises the party of the second part hereby releases and relinquishes unto the party of the first part any and all claims, demands and causes of action, of whatsoever nature or character, which he has, or may or might have, arising out of or incident to the existence or operation of the canal and the irrigation of the lands of the party of the second part by the party of the first part during any time prior to the date of the execution hereof. And the party of the second part hereby agrees to indemnify and save harmless the party of the first part against any and all claims, demands or actions for damages or loss growing out of or incident to any water contract existing between the parties herein prior to the execution of this contract."

[1] The first assignment of error complains of the refusal of the court to instruct the jury to find for the defendant if they believed from the evidence that the plaintiff executed the contract of 1910 containing the release above set out, and the second assignment predicates error upon the following paragraph of the court's charge: "The defendant has also pleaded that the plaintiff by the contract with defendant for the irrigation of his crop for the year 1910, which contract is in evidence, waived and released the defendant from damages sued on in this case. It is for you to say whether this condition was a reasonable one to be imposed by the defendant in making said contract with plaintiff to irrigate his land for the year 1910. If you find it was a reasonable condition, then you will find against the plaintiff in this case; but, if you find it an unreasonable condition, then you will disregard the same."

The undisputed evidence shows that plaintiff executed the contract of 1910 containing the release above quoted, and therefore the requested charge was in effect a peremptory instruction to return a verdict for the defendant. The court did not err in refusing to give this charge.

Plaintiff, as before stated, pleaded that said release was void for want of consideration, in that the only consideration therefor was the agreement of appellant to do that which it was already legally bound to do. Appellant is an irrigation corporation, organized and chartered under the laws of this state, and as such was bound to furnish appellee the proportionate share of water to which he was entitled as the owner of land contiguous to appellant's canal upon

the same terms that it furnished water to all of such landowners. The contract of 1910, which contains this release, does not clearly disclose that appellant thereby obligated itself further than to comply with its legal duty to furnish appellee the water to which he was entitled for the same rental and upon the same terms that it contracted to furnish water to other landowners entitled thereto, and, if there was no other consideration for said release, plaintiff's plea of want of consideration should be sustained.

There is nothing in the evidence 'set out in the brief of either party to indicate that plaintiff was coerced in signing the contract containing said release, or that appellant required him to execute the release in order to obtain the water to which he was entitled, and, in the absence of such evidence, the question of the reasonableness of such requirement was not raised, and the charge complained of by the second assignment of error before quoted should not have been given. The mere fact that such release was contained in a contract made by an irrigation corporation to supply water to a landowner entitled to it would not raise the issue of the reasonableness of such release, and if there was a consideration for the release it would be just as valid when contained in a rental contract of this kind as it would be if it had been executed entirely independent of such rental contract.

As before said, if the only consideration for the release was the agreement of appellant to comply with the obligations imposed upon it by the law of its creation, such release is void for want of consideration. If appellant required appellee to execute the release in order to obtain the water to which he was entitled, and the jury should find that such requirement was unreasonable, the release would be void on this ground also, unless there was a consideration therefor other than the agreement of appellant to perform the duties required of it by law. It may be that the question of the reasonableness of the provision for the release of damages and the question of want of consideration for said release in the practical results to follow from the determination of such questions as they arise upon the facts of this case are the same, but this would only be true in case there was no consideration for the release other than the agreement of appellant to perform its legal obligations to plaintiff, and that question was not submitted to the jury.

[2] The sixth assignment of error complains of the following portion of the court's charge: "If you find for the plaintiff, then the measure of his damages will be an amount equal to the difference between the value of the crop in the market in its vicinity for the season of 1909 you find he would have made if it had been properly irrigated less three-tenths thereof, that would have been due for water and land rent, and

141 S.W.—51

such reasonable amount as it would have cost him to raise, harvest, prepare for market, and market said crop and the reasonable market value of the crop he did actually make."

This assignment must be sustained. The undisputed evidence shows that plaintiff was to pay one-fifth of the rice raised by him to appellant for water rent and one-fifth to his landlord, Dr. Hawthorne, for land rent. It is therefore manifest he would only be entitled to recover three-fifths of the value of the rice that he would have raised, less the cost of raising, harvesting, and marketing the same, and not seven-tenths thereof, as stated in the charge. The plaintiff was only entitled to recover compensation for the loss sustained by him, and, since one-fifth of the crop that he would have raised would have gone to his landlord, he cannot have sustained any loss as to that one-fifth, and is therefore not entitled to recover compensation therefor.

There was no privity of contract between appellant and the landlord, Dr. Hawthorne, and he had no cause of action against appellant.

One-fifth of the additional amount of rice that plaintiff would have raised if the crop had been properly irrigated, or the value thereof, would have gone to the landlord as rent; but, not having raised this additional crop, plaintiff is not liable to his landlord for his rental share thereof, and to permit him to recover that amount from appellant would be to give him that much in excess of compensation for the loss sustained by him. Compensation for the loss sustained is the true measure of damages in cases of this kind. Rice Milling Co. v. Wells, 33 Tex. Civ. App. 545, 77 S. W. 253; Dunlap v. Raywood Rice Co., 43 Tex. Civ. App. 369, 95 S. W. 43.

We do not think the case of Railway Co. v. Bayliss, 62 Tex. 570, is in conflict with this holding. The opinion in that case only goes to the extent of holding that a landlord who rented to a tenant for a portion of the crop raised by the tenant on the rented premises was not a part owner of the growing crop, and that the tenant who was in possession of the crop and its owner could sue and recover the entire damages to the crop caused by the wrongful act of a third person.

The instant suit is not one to recover damages for injury to or destruction of property owned by and in the possession of the plaintiff, caused by the trespass or wrongful act of the defendant, but a suit to recover damages for breach of contract, the measure of which, as before stated, is the actual loss suffered by plaintiff by reason of such breach.

If plaintiff in this case can recover the value of the one-fifth of the crop he would have been required to give for land rent, upon the same principle he could recover the value of the one-fifth that he would have been required to give for water rent. He

is no more entitled to the one than the other, and we think it clear he is entitled to neither.

[3] In support of his plea that defendant had waived the written application for water required by the terms of the contract before set out, the plaintiff was permitted to testify that the defendant did not require its tenants to file 10 days' written notice of their demand for water. His testimony on this subject was as follows: "Up to the time they commenced watering my land and for some time afterwards I did not know of anybody having to call on the company to file a written demand with the company. The custom about that, so far as I know, was just to ask for water—that is all I ever heard of. I asked the canal company for water every morning, sometimes twice a day. They had been promising me water. While I was making these verbal demands for water, they did not make any objection that I was not demanding it in writing."

Plaintiff also over the objections of defendant brought out the following testimony by the witness C. B. Allaire, defendant's general manager: "We never have demanded it. I never made the point and I have never refused to irrigate because he did not sign a written demand for it. As to whether I disregarded it: We never paid any attention to it; it was in the contract. If they made a written demand, why, we looked into their necessities and gave them water as soon as possible. We looked into their necessities just as soon on a verbal demand. I never made a point on that. As to whether I want to make a point on that in a lawsuit, well, it is in the contract; I think it would be a hardship on the farmers if we insisted on a written demand for us every time they wanted water. You have to request it in writing 10 days if they need water is the contract. I think they would know 10 days ahead when they needed water. It would not necessarily be an unreasonable request. There might be an emergency where we could not distribute in any other way except by having enough time to get around you. When water was scarce as last year, we would have to have notice. I can't water everybody at a minute's notice. I never insisted on any requirement. We aimed to make a crop—we did not stand on technicalities; but if water was scarce, and we had a dozen demands and could only supply three, then we would have to put nine of them off until we could supply them, and in that case we might need these 10 days' written notices in order to protect ourselves. It is simply an emergency provision in the contract. With reference to whether they could all make written demands for water, and I did not require but one demand, that written contract, and all of them, could make written demands at one time before I was

ready—well, of course, we could not do anything impossible."

Defendant objected to this testimony on the ground that it was irrelevant and inadmissible for the purpose of showing waiver of the 10 days' written notice of request for water, because by the express terms of the contract the waiver of such notice could not be shown by proof of the fact that defendant had furnished water without any written request therefor.

We think this objection to the testimony should have been sustained. If the clause in the contract was valid, and no attack seems to have been made upon it by plaintiff, we think it clear that its purpose and intent was to deny plaintiff the right to establish an implied waiver by testimony of this kind.

The testimony shows nothing more than that the defendant had furnished water to plaintiff and other tenants without any written demand therefor, and it is expressly provided in the seventh paragraph of the contract, upon which plaintiff's suit is based and which is before set out, that this fact shall not be considered as a waiver of the 10 days' written notice.

What we have said disposes of the questions presented by appellant's brief which we think require consideration.

For the errors indicated, the judgment of the court below is reversed, and the cause remanded.

Reversed and remanded.